We'll move to our next case this morning, and it is Stocks v. Saul. All right, I think we have both counsel. You may proceed, Mr. Jenner. MR. JENNER Yes. Thank you, Your Honor, and may it please the Court. The issue here is really only one issue, and that is the issue of dealing with the treating physician rule and whether or not the ALJ properly evaluated the opinions of Dr. Lilly. The appellate would contend that the ALJ failed to evaluate the opinion of Dr. Lilly pursuant to the treating physician rule that was in effect at the time of this hearing. Furthermore, the appellate would contend that the reviewing courts in this matter have gone outside their role and substituted their own judgment as it relates to how the ALJ actually applied the facts to the opinion of Dr. Lilly. So considering that this case is really about the mental health impairments, it started back on October 9, 2014, when the plaintiff presented to Centerstone, a mental health clinic, for an evaluation. It was determined there that Mrs. Stocks was a very depressed and traumatized woman and referred her to individual therapy as well as psychiatric evaluation. At Centerstone there, she was diagnosed with post-traumatic stress disorder, major depressive disorder, reoccurring episodes severe with panic attacks, unspecified obsessive compulsive disorder. On March 2, she began her treatment with Dr. Lilly for her individual therapy. It is true that it is the goal of Dr. Lilly to deal with and focus on the family dynamics that led to some of Mrs. Stocks' anxiety and her anger management. She did feel benefit from the therapy, but at no time did Dr. Lilly feel that she was cured or freed from any of her issues. Mr. Jenner, I wonder if you could comment for a minute about the ALJ's concern that Dr. Lilly, the ALJ says a review of the mental health treatment notes revealed that much of the focus, this is at page A14, much of the focus was on family discord and anger management. So of what relevance is that focus in your view? Well, I mean, I think that there is a focus of dealing with anger management and dealing with family discord. But I think that that also was related to her anxiety and her depression is what caused all of those issues. Well, that's right. That's what I was getting at. It sounds like maybe the ALJ is confusing the causes of her distress on the one side with the consequences of her distress on the other side. Yes, I would agree. And so I think when we look further at what Dr. Lilly said, I mean, he went through a he found were marketed limitations for Mrs. Stocks. I'm not going to go through all of those, but if you were limited to that fashion, there would be no way that you could really work in any way. But following the hearing, the ALJ determined that Stocks suffered from severe impairments from a mental aspect that included affective disorder and anxiety disorder. So he recognized that. And then the ALJ further said that she had a moderate limitation in dealing with understanding and remembering and applying information and interacting with others in concentration, persistence and pace. Is there, excuse me, I have one other question about Dr. Lilly. Is there any explanation in the record or any explanation that she offered for the gap in treatment that the ALJ comments on from September 2015 to April 2016? I could find nothing in the record. So it's a six month gap or so, and that's just what it is. Yeah. I mean, sometimes people, sometimes there's evidence that, you know, somebody's insurance ran out or, you know, it's expensive to have these therapy sessions, but if there's nothing, there's nothing. Yes. So I think I'll get right to the crux, but you know what, this really boils down to the treating physician rule, and that's an SSR 96-2P, and it provides that a treating source's opinion is given controlling and significant weight provided it is well supported by the objective medical evidence is not inconsistent. And but what the second part is, is if the ALJ fails to give controlling weight to the treating physician, there must consider all of the factors in deciding the weight given. And so that's the examining relationship, the treatment relationship, supportability, consistency, specialization, and other factors. Here, this court has continued, continually held that the ALJ should consider all of those factors, and they've gone on to say that the checklist of factors is really designed to help ALJs to determine what the weight is to be given to the treating physician. The commissioner is going to argue that they only need to give, minimally articulate the reasons for the weight asserted. And I just, I think that that's based upon the Elder case, and when you look at that case and some of the other cases that follow it, in the Elder case specifically, they said that they discounted the ALJ's position because he wasn't a specialist and he didn't do a proper evaluation, so they stopped right there, which makes perfect sense. They don't have to go into all of those other things. Here, we're not dealing with that. Dr. Lilley is a specialist. He was her treating physician. He went through multiple evaluations. And so I do think that the ALJ, in this case, has to articulate those factors and go through those factors one by one so we can determine how that's going to look. The district court expanded on this reasoning by the ALJ, and they really didn't look, they took it further, and they indicated that the failure of the specialized treatment, and they look at the failure of the specialized treatment, they look at the gap in treatment, but they didn't really expand, and they really couldn't find where the ALJ actually linked the two together. And that's what we have to have. We have to have a roadmap to show us what is the reasoning by the ALJ. You know, the treating physician rule, while it's no longer in effect, it is of great importance, I believe, in Social Security law. I think it was there for a long time for a reason. My father has been before this court many times to argue this very issue, and it's near and dear to me. I think that it was important, and because we really shouldn't have to search for the treating physician who presumably knows the patient better than anybody else. Here it was, it should be obvious, but here it wasn't. The ALJ simply said, well, we're not going to, we're not going to, we're not going to have this treating physician because of the gap in treatment, and because they focused on these certain things. That's not enough. And I'll reserve the rest of my time for Robyn. That's fine. Thank you. Ms. Gibbons. Good morning, Your Honors. May it please the Court. My name is Katherine Gibbons, and I represent the defendant, Apelli, the Commissioner of Social Security. As counsel noted, there is only one very narrow issue in this case, whether the ALJ appropriately analyzed the checkbox opinion from Dr. Lilly and gave good reasons for discounting it and giving it little weight. So, Ms. Gibbons, I'm not sure why the Commissioner is so dismissive when a treating physician fills out a form that the Social Security Administration makes available to that person. It's an efficient way to indicate your view of a lot of things, and if you're not going to give weight to checkbox responses, then it seems you should stop distributing the forms. Your Honor, I'm not sure how, in this case, the form, you know, how the doctor got the form, if that was from the attorney or if that's something the agency provided. But I would say that the difference here is when the reviewing doctors fill out these And so, in Section 1, it's just the checkbox findings, and as the Court has addressed in other contexts, the reviewing doctors are then expected to take those checkbox findings and turn it into a narrative explanation that actually provides specific functional limitations and provide an explanation for those findings, and here, all we have is the checkbox and where an explanation section is given, it just says, see treatment notes. Right, it says, see treatment notes, and the ALJ has this brief little paragraph at page A14, page 10 of 12 of the ALJ's opinion, which does seem to me to be confusing. It looks at, and the ALJ indicates that the mental health treatment notes were consulted enough to realize that she, they're talking about family discord and anger. They're actually also talking about other things. This is a pretty breezy look at a treating physician's work, and actually, Dr. Lilly's notes show that family discord and anger issues are also among her stressors. Correct, Your Honor, and I believe the ALJ But she never says a word about it. So do we know that she even knew? I believe, and I would have to double check, but I believe the ALJ explicitly said that the, in the, I'm looking, I have it up here now, that most of the treatment records were, I think that the ALJ said that the focus was on family discord and anger management. Well, as I was saying, I was just looking at this part of the ALJ's opinion on page 10, and it just says, a review of the mental health treatment notes revealed that much of the focus was on family discord and anger management. Right. But what it doesn't acknowledge is that family discord, depression, anxiety, PTSD, the very things that we're talking about were also there, and in the absence of guidance from the ALJ, it's pretty clear she looked at the notes. I don't know why she would talk about reviewing the notes if she hadn't looked at them, and yet we get no input from her about this. I believe earlier in the decision, the ALJ did discuss, him, I'm sorry, it was him, yeah. I believe that the ALJ did discuss other treatment records earlier in the decision from Dr. Lilly and kind of the course of how that treatment went. And I understand that you're making a distinction between the causes and the consequences, but I would point out two things. First, plaintiff has done nothing in her brief in the district court or on appeal to discuss any of this evidence or say why it supported or didn't support Dr. Lilly's opinion. So there's no discussion of that. What the plaintiff is saying is that by failing to follow either the first layer of the treating physician rule, which applied to this case, I know the commissioner doesn't contest that, or the backup position of a careful look at all of the individualized natures of the relationship, that the ALJ just hasn't done the job. And I'm looking through the rest of the opinion and I just don't see any kind of careful look at Dr. Lilly. I see a little discussion about the third party function report by the sister, but we're not talking about that here. Just not that much. I don't know what you're relying on. I believe, Verlier, he does talk about that she started and, again, that the focus was on the family discord and anger. The ALJ points out the gap in treatment, that therapy was continued. Can you give me a page? Because I'm uselessly flipping through this now. Other than that page 10 reference that I've already noted. I believe on pages 8 to 9 is the summary of the evidence. It starts off at the beginning where actually the ALJ is looking all the way back to, I think, 2010 or four years before the alleged onset date and looking at the records and kind of discussing it in the context of the whole. So I think part of the issue here, too, again, plaintiff has not pointed out anything in the treatment records that the ALJ got wrong. I think that's important. All right. So if you're looking at this sentence, it's at the very bottom of page 8 that carries over to the top of page 9. That's even more conclusory than what she says over on page 10 or what he says. I'm sorry. I don't know why I keep making this a woman. But what ALJ Beckman says, just attended mental health counseling visits. She has a cholecystectomy, which is not about mental health. Goodness knows. And then family discord, gap in treatment, on we go. I mean, so I don't see where there's a coping with it. In terms of, but I think this summary, plaintiff has not pointed out how this is an inaccurate summary of the records. There's nothing, every single one of those treatment records discusses a family-related matter, a family-related stress and coping mechanism. So there's nothing else outside of that. That's my close effect thing. She is, what she's saying, and of course, the ultimate question for the commissioner, I hardly need to remind you, is how can she function in light of her psychological problems, in light of whatever physical problems we have? Obviously, each case is different. So if the source of psychological problems is in part family discord, it doesn't mean, it doesn't answer that question. It means she's got psychological problems, PTSD as well. That's diagnosed all over the place. And where do we see the ALJ engaging in that? Well, I think the issue is that Dr. Lilly doesn't engage in that. Dr. Lilly has this, these checkbox findings, and then there's treatment notes that discuss family discord, but there's no connection there. In the treatment records, there's no discussion. Think about other cases where you see that there is, plaintiff has difficulty concentrating. She is having trouble leaving the house. She feels agoraphobic or something like that. And actually, what you see in the ALJ did discuss this. This is why it's important in the context of the record as a whole. The ALJ discusses other treatment records where she was reporting that her anxiety and depression didn't interfere with her daily activities, or where there were, you know, she went to see the consultative examiner, and that record showed that she didn't have any significant, she had excellent attention, I think is what it said. So the treatment records themselves from Dr. Lilly don't indicate any further functional limitations. And then you consider those records in the context of the whole, that the ALJ did discuss the other records, but few records there were, and there's no evidence of other functional limitations. And in fact, the claimant has not said, if the ALJ gave Dr. Lilly's opinion greater weight, these are the restrictions he should have included in the RFC. There's no RFC argument here at all. So I think for these reasons, the ALJ's explanation makes sense in the context of this record, which is rather thin. In terms of the reasons that the ALJ did provide, the ALJ talked about how, again, it was unsupported by the records. He noted the gap in treatment in terms of the treating relationship and the inconsistency with other records. Plaintiff here, or the claimant here is pointing to three reasons that were all addressed by the ALJ. So what the claimant is pointing to is that the ALJ should have considered the treating relationship. Clearly, the ALJ acknowledged the treating relationship, the length of the relationship, which the ALJ discussed. She started seeing him in March. He noted when the opinion was rendered, and he noted the gap in treatment. And he also acknowledged the specialization. And I think what's important is the two cases that the claimant relies on. So if you look at kind of the case law as a whole, where the court has remanded is where there are factors or evidence that the ALJ didn't consider. Here, plaintiff literally points to no evidence in either brief at the district court or on appeal. Plaintiff points to no evidence that the ALJ did not consider. So for these reasons, we would argue that the court should affirm the decision. All right, thank you very much. Mr. Jenner, you had some time left. Yes, I mean, I think the issue is that we can't really know what the ALJ's reasoning is here. And that's the law of the treating physician is quite clear. The ALJ is supposed to go through this four step factors and to tell us how they reason that to determine what the weight is given. And we don't have to get to any of the other things because we can't get past that. And I think that's what's so troubling here is why is it so hard to go through these four steps? It can't be that hard. It's really quite easy. And they just didn't do it. And I think when we look at what the commissioner indicates as to trying to find areas in the record that support what the ALJ's reasoning could have been, it becomes even more muddled. They argue that because the ALJ, they're saying that the ALJ considered Dr. Lilly a specialist because he wrote his name down with his credentials after it. Well, that's frankly misleading. That doesn't necessarily mean that the ALJ considered him to be a specialist. It just means that that's how his name is to be and has his credentials after it. They also address, they say that the ALJ addressed the treating physician by noting that a review of the mental health treatment notes, well, that's misleading too. Of course, the ALJ reviewed the treatment notes and everything. That's what they're supposed to do. But the question is, how does it link to these factors in order to why he discounted the opinion of Dr. Lilly? And we don't have that. It doesn't explain that. It is scarce at best. And it just, again, the treating physician rule, it was a good rule. It helped us establish what this bridge is to get to the reasoning. And we just don't have that here. It's very simple to follow those steps and it wasn't done here. So I thank you. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement. And that concludes our calendar for today. We are at recess.